# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE S. SPENCER,     : | |
|     Petitioner          : | |
| : | No. 1:19-cv-2056 |
| v.                         : | |
| : | (Judge Kane) |
| CATRICIA L. HOWARD,     : | |
|     Respondent      : | |

**MEMORANDUM**

On November 29, 2019, pro se Petitioner Wayne S. Spencer ("Petitioner"), who is currently confined at the Federal Correctional Institution Allenwood in White Deer, Pennsylvania ("FCI Allenwood"), initiated the above-captioned case by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the decision of a Disciplinary Hearing Officer ("DHO") who found him in violation of Code 108, possession of an electronic device. (Doc. No. 1.) Following an Order to show cause (Doc. No. 8), Respondent filed a response, contending that Petitioner was "afforded all due process protections and the evidence presented supports the sanctions imposed." (Doc. No. 11 at 2.) Accordingly, because the time period for filing a traverse has expired, Petitioner's § 2241 petition is ripe for disposition.

**I.     BACKGROUND**

On September 25, 2018, Officer Hampton conducted a random pat search of Petitioner. (Doc. No. 1-1 at 2.) Officer Hampton found that Petitioner possessed a pair of ear buds with a built-in microphone that are used to talk on cellular phones. (Id.) Officer Hampton confiscated the ear buds and told Petitioner that they were unauthorized because of the built-in microphone and that he was in violation of Code 108, possession of an electronic device. (Id.) Officer Hampton prepared Incident Report #3174160, a copy of which was provided to Petitioner on September 26, 2018. (Id.) Petitioner acknowledged that he brought the ear buds with him from

"the other jail" but denied knowing that they contained a microphone for a cellular phone. (Id.) Petitioner subsequently appeared before the Unit Discipline Committee ("UDC"), which referred the Incident Report to the DHO for further proceedings. (Id.)

Petitioner appeared before the DHO on October 11, 2018. (Id. at 3.) Initially, Petitioner's requested staff representative did not appear. (Id.) However, prior to the start of the hearing, Petitioner "informed the DHO he no longer required representation." (Id.) The DHO, therefore, noted that Petitioner waived his right to a staff representative. (Id.) Petitioner was verbally advised of his rights and waived his right to request witnesses. (Id.) He provided the following statement: "Those headphones came with me from another spot. I didn't know they had a microphone in them. An old cellie gave them to me when he [was] released." (Id.)

The DHO found the charge of Code 108 to be supported by the greater weight of the evidence. (Id. at 4.) In doing so, the DHO considered the Incident Report, the chain of custody log, and a photocopy of the recovered ear buds. (Id.) The DHO "did not find the lack of knowledge claimed by [Petitioner] to be material in showing the charged act not committed." (Id.) The DHO sanctioned Petitioner with disallowance of forty (40) days of good conduct time, thirty (30) days of disciplinary segregation, and twelve (12) months' loss of email privileges. (Id.) The DHO issued his report on October 18, 2018, and a copy was delivered to Petitioner that same day. (Id. at 5.) Petitioner subsequently exhausted his administrative appeals regarding this Incident Report. (Id. at 6-9.)

Petitioner then filed the instant § 2241 petition. (Doc. No. 1.) In his petition, Petitioner argues that his due process rights were violated because: (1) the DHO was insufficiently impartial; (2) the evidence was unreliable because Petitioner did not know that the ear buds contained a microphone; (3) the "expertise of the Officer who wrote the Incident Report to

2

correctly identify a cellphone microphone was never verified"; and (4) the "evidence relied on was never proven to be anything other than a [manufacturer's] installed component of the earbuds." (Id. at 3-4.) As relief, Petitioner requests that the Court restore his good conduct time or direct that he be afforded another hearing before the DHO. (Doc. No. 2 at 4.)

## II. DISCUSSION

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. See Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court has held that that there may be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. See id. at 557. Because Petitioner's sanctions included the loss of good conduct time, he has identified a liberty interest for purposes of the case at bar.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison that may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. See id. at 563-67. The Supreme Court has held that the standard of review about the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the

3

disciplinary board." See Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the Court must reject any evidentiary challenges by the plaintiff. See Hill, 472 U.S. at 457. The Hill standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. See Thompson v. Owens, 899 F.2d 500, 501-02 (3d Cir. 1989).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, et seq., and entitled Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. See 28 C.F.R. § 541.5. Under the regulations, an inmate "ordinarily receives[s] the incident report within 24 hours of staff becoming aware of . . . involvement in the incident." See id. § 541.5(a) (emphasis added). The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends, or holidays. See id. § 541.7(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. See id. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a

prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. See id.

A DHO "will only conduct a hearing on the incident report if referred by the UDC." See 28 C.F.R. § 541.8. An inmate will receive written notice of the charges twenty-four (24) hours before the DHO hearing unless the inmate waives the notice requirement, in which case the DHO may conduct the hearing sooner. See id. The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. See id. After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review, and disposition. See id. If an inmate is found to have committed a prohibited act, the DHO may impose any of the available sanctions listed in Table 1 and 2 of § 541.3. See id. Finally, the written report or decision of the DHO will contain the following: (1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. See id.

### A. Whether Petitioner Received His Due Process Rights

The Court concludes that, contrary to Petitioner's arguments, he received his procedural due process rights under Wolff and the BOP regulations. The record reflects that Petitioner received a copy of the Incident Report on September 26, 2018, and the hearing before the DHO was held on October 11, 2018. (Doc. No. 1-1 at 2-3.) The record also demonstrates that Petitioner chose to proceed without a staff representative and waived his right to have witnesses appear on his behalf. (Id. at 3.) Petitioner received a copy of the DHO's written decision, which

5

included a review of the evidence relied upon and the rationale behind the disciplinary action, on October 18, 2018.  (Id. at 5.)

In his § 2241 petition, Petitioner suggests that his due process rights were violated because the DHO was "insufficiently impartial." (Doc. No. 1 at 3.)  He contends that the DHO "accepted the reporting Officer's claim without verifying that there was indeed a cellphone microphone in the earbuds." (Id.)  Petitioner suggests that the DHO was biased because the "reporting Officer even asked this inmate afterwards, 'They threw it [the Incident Report] out right?'" (Id.)

While Petitioner is correct that he was entitled to an impartial hearing officer, see Wolff, 418 U.S. at 571, his conclusory allegation of bias cannot stand.  As noted supra, the DHO did not solely rely upon the reporting officer's statements contained within the Incident Report to conclude that Petitioner had violated Code 108.  In the context of a prison disciplinary proceeding, the requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge from sitting on the disciplinary body." See Meyers v. Aldredge, 492 F.2d 296, 306 (3d Cir. 1974).  Petitioner simply has not demonstrated that the DHO was "personally or substantially involved in the circumstances underlying [the investigation of the] charge" such that the DHO should have not presided over the hearing.  See Greer v. Hogston, 288 F. App'x 797, 799 (3d Cir. 2008).  Petitioner's "generalized critique" of the DHO is insufficient to demonstrate the degree of bias necessary to sustain a due process violation.  See Lasko v. Holt, 334 F. App'x 474, 476 (3d Cir. 2009).  Accordingly, the Court finds that Petitioner received all the due process protections to which he was entitled.

## B. Whether the DHO's Decision Was Based on Sufficient Evidence

With respect to the sufficiency of the evidence, the DHO stated the following in his decision finding Petitioner guilty of Code 108, possession of an electronic device:

> During this discipline hearing, the following information was evidentiary and documented by the DHO in his findings.
>
> [Petitioner's] involvement in the incident, as noted in Section 11 of Incident Report 3174160, as provided by T. Hampton, Officer, was reviewed. Paraphrased, Hampton writes: On September 25, 2018, at approximately 5:50 pm while doing random pat searches in Brady A, I pat searched [Petitioner]. [Petitioner] had on his possession ear buds with the built in microphone that are used to talk on cell phones. I confiscated the ear buds, explained that they are unauthorized because of the built in microphone and that he's in violation of code 108, possession of other electronic device.
>
> Inculpatory evidence in the form of a photocopy of the recovered headphones showing the microphone device was reviewed.
>
> Upon questioning by the DHO, [Petitioner] denied the charge. He elaborated upon his plea by stating, "Those headphones came with me from another spot. I didn't know they had a microphone in them. An old cellie gave them to me when he released." The DHO did not find the lack of knowledge claimed by [Petitioner] to be material in showing the charged act not committed. The contraband headphones containing a microphone (electronic device) as recovered from [Petitioner] by Officer T. Hampton on September 25, 2018, at about 1750, supported the charged act. This was not purchased or provided through a legitimate prison source and the headphone/microphone is an item that can be used with a cellphone or to aid in recording.
>
> After the consideration of evidence documented above, the DHO has drawn the conclusion the greater weight of the evidence, listed in the paragraphs above, supports the finding [that Petitioner] committed the prohibited act Possession of Hazardous Contraband, code 108, on September 25, 2018, at about 1750, in Brady A.

(Doc. No. 1-1 at 4.) Moreover, the DHO explained the imposed sanctions, stating:

> [Petitioner's] possession of unauthorized microphone headphones threatened the orderly running of the correctional facility. For inmates to retain items of this type, not known to be provided to them through institutional channels[,] indicates defiance and refusal to follow established and known policy. Limits are placed on inmate property to persuade them not to possess unnecessary or potentially dangerous items. Accordingly, 30 Days disciplinary segregation and 40 Days

7

> [disallowance of good conduct time] are sanctioned in an effort to punish [Petitioner] for his behavior, while 12 Months loss of email privileges will hopefully deter him from it in the future.

(Id. at 5.)

Petitioner suggests that the evidence was insufficient to support the DHO's finding because (1) he did not know that the ear buds contained a microphone; (2) the "expertise of the Officer who wrote the Incident Report to correctly identify a cellphone microphone was never verified"; and (3) the "evidence relied on was never proven to be anything other than a [manufacturer's] installed component of the earbuds." (Doc. No. 1 at 3-4.) However, when an inmate challenges the sufficiency of the evidence supporting the DHO's decision, "the 'some evidence' standard does not require . . . independent assessment of the credibility of witnesses or weighing of the evidence." See Speight v. Minor, 245 F. App'x 213, 216 (3d Cir. 2007) (quoting Hill, 472 U.S. at 455-56). In the instant case, the DHO found that Petitioner's lack of knowledge about the microphone was not material to Petitioner's guilt. (Doc. No. 1-1 at 4.) The Court is not required to re-assess the credibility of Petitioner's defense. See Donahue v. Grondolsky, 398 F. App'x 767, 772 (3d Cir. 2010); see also Ellis v. Baltazar, No. 3:18-cv-621, 2019 WL 247230, at *2-3 (M.D. Pa. Jan. 17, 2019) (rejecting the inmate petitioner's argument that the evidence was insufficient to show that he had the requisite mens rea to commit the acts charged); Waltower v. Farley, No. 4:12-cv-2036, 2013 WL 4828661, at *3 (N.D. Ohio Sept. 9, 2013) (noting that "a determination of [an inmate's] 'mens rea' was not required before the DHO could determine he committed a prohibited act"). Thus, contrary to Petitioner's suggestion, "some evidence" supports the DHO's conclusion that he was guilty of a violation of Code 108. See Denny v. Schultz, 708 F.3d 140, 145 (3d Cir. 2013) (noting that a court "need only find that the

[Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause").

## III. CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) will be denied. An appropriate Order follows.